# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

S. SHANE KNOX                    )
                                 )
      Plaintiff,            )
                                 )
v.                               )     Case No.:
                                 )
FUTURE MOTION, INC.              )
                                 )
      Defendant.           )
                                 )

## COMPLAINT

**COMES NOW**, Plaintiff, S. Shane Knox, by and through his attorneys of record, Hall Ansley, P.C., who respectfully files this Complaint against Future Motion, Inc., alleging the following:

1.      Plaintiff S. Shane Knox brings this civil action to recover damages for the severe physical injuries, emotional distress, and economic harm he suffered as a result of purchasing and using/riding a defective and unreasonably dangerous "Onewheel GT" (which is a one-wheeled transportation device that is often described as an electric skateboard) that was designed, developed, constructed, assembled, manufactured, inspected, tested, packaged, labeled, marketed, advertised, promoted, distributed, and sold by Future Motion, Inc. The specific Onewheel GT that S. Shane Knox purchased from Future Motion, Inc. on May 7, 2023 bears serial number 2251395348 (referred to hereafter as the "subject Onewheel GT").

## PARTIES

2.      Plaintiff herein is S. SHANE KNOX (hereafter referred to as "Plaintiff"), a person of the full age of majority and who is resident of, and domiciled in Republic, Missouri.

1

3.     Defendant herein is FUTURE MOTION, INC. (hereafter referred to as "Defendant"), a Delaware corporation with its principal place of business located in Santa Cruz, California. Defendant may be served with process through its registered agent for service, A Registered Agent, Inc., 8 The Green, Suite A, Dover, Delaware 19901.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists and the amount in controversy exceeds $75,000.00, exclusive of fees, costs, and interest.

5.     This Court is authorized to exercise personal jurisdiction over Defendant Future Motion, Inc. pursuant to Mo. Rev. Stat. § 506.500 because:

a.   Defendant conducted substantial business in Missouri and purposefully availed itself of the privilege of doing business in Missouri, thus invoking the benefits and protections of its laws;

b.   Defendant regularly and persistently transacted business in the state of Missouri, including marketing, distributing, and/or selling Onewheel products in the state of Missouri to and for use by consumers in the State of Missouri, and Defendant has transacted and conducted business within the State of Missouri that relates to the allegations in this Complaint;

c.   Defendant expected or should have expected its acts to have consequences within the State of Missouri and derived substantial revenue from interstate commerce related to Onewheel products sold to and used by consumers, including Plaintiff, in the State of Missouri;

d.   Defendant committed a tortious act within the state of Missouri by selling and delivering defective Onewheel products, including the Onewheel GT, to consumers, including Plaintiff, in the state of Missouri via distributors, dealers, and Defendant's website; and

e.   Defendant caused tortious injury to Plaintiff through its acts or omissions in the state of Missouri and Plaintiff suffered injury in the state of Missouri as a result of the negligent acts and/or omissions committed by the Defendant in the state of Missouri.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff is a resident and citizen of the State of Missouri and all or a substantial part of the events or omissions giving rise to Plaintiff's claims and damages alleged herein occurred in the State of Missouri, and within the Western District of Missouri.

## GENERAL ALLEGATIONS REGARDING THE ONEWHEEL

7.     Defendant designed, developed, constructed, assembled, manufactured, inspected, tested, packaged, labeled, marketed, advertised, promoted, distributed, sold, and continues to sell its Onewheel products (which models consist of the Onewheel, the Onewheel+, the Onewheel Pint, the Onewheel Pint X, the Onewheel GT, and the Onewheel GT XR), which are one-wheeled transportation devices that are often described as an electric skateboard.

8.     Upon information and belief, Defendant also develops and designs the subsystems that power the Onewheel products, including its motors, power electronics, battery modules, and smartphone applications ("apps").

9.     Operation of Defendant's Onewheel products are controlled and/or monitored, in part, by an "app" installed on users' smartphones. The Onewheel app allows users to view their total miles, battery life, speed, and other information.

10.     Defendant promoted its Onewheel products, including the Onewheel GT, as a "toy" that anyone from ages 14 to 86 can enjoy. On its website, Defendant repeatedly claims that its Onewheel products are safe and require no maintenance to operate. Videos on Defendant's website depict its Onewheel products being operated in concrete drainage basins, through standing water, on an open highway (with cars approaching), across dirt paths, on the beach, through wooded areas, across fallen logs, and on and off the sidewalk.

11.    A "FAQ" on Future Motion's website asks, "Are Onewheels difficult to ride?" Posted response: "Nope! Anyone can ride Onewheel with a little instruction and practice. Onewheel is packed with technology that actively helps to keep you balance . . . . Tens of thousands of people of all ages and skill levels have learned to ride and we know you can do it too. Don't believe us? Watch us demo a stranger or check out 86 year old, Shreddin Eddie." The phrase "Shreddin Eddie" is a link to a YouTube video featuring a group of senior citizens (some in wheelchairs) cheering on an elderly gentleman on a Onewheel, with a younger person prompting him with, "it's a little easier than you thought, huh?" Another FAQ asks, "What's the maximum age to ride Onewheel?" Posted response: "There is none! We have riders of all ages and it is never too late to start riding a Onewheel. Don't believe us? Check out 86 year old, Shreddin Eddie." And another FAQ asks, "Do Onewheels need regular maintenance?" Posted response: "Nope! They're built like tanks."

12.    To ride a Onewheel, the rider must step on the back footpad, then place their foot on the front footpad, and slowly bring themselves up to a balanced position. Once the rider is balanced, the Onewheel's motor engages. The rider can then lean forward to move forward and lean backward to slow down. To turn, the rider puts pressure on either their toes or heels.

13.    One major limitation of Defendant's Onewheel products is that they require power to keep the rider balanced. A sudden loss of power causes the balancing functionality to cease, causing the Onewheel to nosedive and throw the rider forward.

14.    One of Onewheel's key features (and its most dangerous and unpredictable feature) is that it will provide the rider with "pushback," or physical resistance, when approaching the device's limits during use. This pushback feature is allegedly designed as a warning to riders to avoid a dangerous situation, like excessive speeds, low battery power, or overcharging. When the

device reaches a "pushback situation, the nose of the board [the front footpad] will lift to slow the rider down."

15.     Often, however, instead of or in addition to pushback, which is allegedly designed as a warning to riders to avoid a dangerous situation, the Onewheel will simply shut off and nosedive, resulting in the rider being thrown off the Onewheel.

16.     Once the motor's resources reach a critical point, the motor's normal ability to help the rider balance disappears, and the rider will experience an unexpected nosedive. Often, this will feel to the rider like the motor suddenly cut out or shut down. Different factors impact when and what will cause the Onewheel to shut down and nosedive, including the rider's weight, tire pressure, wind direction, battery level, rider stance, and the grade of incline or decline. Thus, predicting exactly when a nosedive will occur or what will cause one is practically impossible.

17.     The primary cause of "pushback" nosediving is velocity. When experiencing velocity pushback, the rider will feel the nose of the Onewheel rise to various degrees when a certain velocity is reached. Often, velocity pushback occurs at a speed lower than that of the maximum due to external factors.

18.     Pushback and nosedives also occur on inclines and declines, purportedly to alert the rider that the motor is on the verge of becoming overworked. The problem with this form of pushback, however, is that it is difficult for the rider to discern whether the rider is feeling pushback or whether it is the natural resistance caused by the incline/decline.

19.     While ascending hills riders are already pressing against the nose and the grade of the hill to ascend, and therefore may not discern pushback. While descending, a rider may not feel pushback because his or her weight is likely already on the tail to control speed. Pushback in such situations will likely result in a sudden nosedive or tailspin, especially if the rider is unaware that

the Onewheel is giving them pushback. Again, the result will be that the rider feels the Onewheel suddenly shut down during operation.

20.     Yet another form of pushback is referred to as regeneration pushback. One way that the Onewheel recharges its battery is to collect kinetic energy when going down a decline and to reserve this power in the battery. However, this may result in the battery becoming overcharged which will damage the battery. Future Motion purportedly "addressed" this problem by designing the Onewheel to suddenly and unexpectedly shut down to prevent battery damage—at the expense of rider safety. Instead of allowing the battery to overcharge, prior to regeneration-related damage to the battery, the Onewheel will shut down. The same problems in discerning pushback while ascending/descending also occur in this situation.

21.     Another common cause of nosedives is acceleration. If a rider attempts to accelerate quickly, the motor may not support the sudden weight and force on it and the nose will suddenly drop. Yet, Future Motion advertises the Onewheel's ability to accelerate quickly, even from a complete stop. Such acceleration nosedives can happen at any speed, even from a dead stop, and the rider will feel as though the motor has suddenly shut off. "Tail-slides" can also occur when the rider shifts his or her weight onto the back of the Onewheel and thereby overwhelms the motor. In that case, the tail of the Onewheel will suddenly drop and slide on the ground, causing the rider to become instantly unbalanced.

22.     When pushback override occurs, the motor of the Onewheel shuts off, causing the front footpad (the "nose") of the Onewheel to violently slam into the ground, propelling the rider forward and causing severe injury.

23.     Not only is it prohibitively difficult to determine when nosedives, tailspins, or shut-offs will occur, but the result of such unexpected and undiscernible events almost invariably cause the rider to be ejected or fall from the Onewheel, often resulting in significant injuries. A Onewheel nosedive or shut-off is not a mild event as it might be with any other type of vehicle. The front of the Onewheel violently slams into the ground and the rider is thrown forward, all without warning.

24.     The Defendant's Onewheel products, including the subject Onewheel GT, could have easily been designed to emit a warning signal (through a warning light, or auditory beep or tone) in the event of excessive speed, overcharging, or low battery, or the Onewheel products could have been designed to simply slowdown in these situations.

25.     Instead, the Defendant's Onewheel products, including the subject Onewheel GT, were designed (defectively) to abruptly stop and/or nosedive, at a considerable and unreasonable risk to Onewheel users/riders such as the Plaintiff.

26.     On November 16, 2022, the Consumer Product Safety Commission ("CPSC") issued a statement warning consumers to immediately stop using all Onewheel models, including the Onewheel, Onewheel GT, Onewheel Pint, Onewheel Pint X, Onewheel GT, and the Onewheel GT XR. In its statement, the CPSC stated the following:

> CPSC evaluated the Onewheel products and found that they can cause the rider to be ejected from the product, which can result in serious injury or death to the rider. There have been at least four reported deaths between 2019 and 2021 and multiple reports of serious injuries after the product failed to balance the rider or suddenly stopped while in motion. The reported deaths resulted from head trauma. Reported injuries include traumatic brain injury, concussion, paralysis, upper-body fractures, lower-body fractures, and ligament damage.
> …
> Future Motion has refused to agree to an acceptable recall of the product. CPSC intends to continue pursuing a recall for consumers. CPSC urges consumers not to buy the Onewheel. If you already own one or purchased one, do not use it due to the ejection hazard.
> …

Under section 6(b) of the Consumer Product Safety Act, the CPSC is required to include with this press release any comments from the manufacturer or a summary thereof. The company objects to this press release. As summarized, the firm states that all Onewheel electric skateboards are safe when operated following basic safe riding principles common to any board sport. The firm sees no reason for riders to stop using their boards or new riders to not purchase one. The firm states that it always encourages riders to carefully educate themselves on how to use the board safely, ride within their abilities, and wear a helmet and other safety gear. The firm states that Onewheel users know that there are inherent risks in riding an electric skateboard, just as there are in any other board sport, or with riding an e-bike, electric scooter, ATV, or motorcycle. The firm states that safety is at the core of its business and that it has made continual improvements in product safety over the six generations of products it has in the market. The firm states that the overwhelming majority of Onewheel riders use the board the way it is supposed to be used, stay within their abilities, respect the board's operational limits, and follow local laws.

27.     On November 16, 2022, the CPSC also issued the following statement regarding the Defendant and its Onewheel products:

Immediately stop using all Onewheel electric skateboards—they are not worth dying for. Future Motion's Onewheel self-balancing electric skateboards can eject their riders, causing serious injury and death. At least four people have tragically died from traumatic head injuries. CPSC asked Future Motion to stop selling the Onewheel and to advise its customers not to use this product. The company refused. Future Motion is unwilling to take appropriate action to fix a product hazard that has killed people. CPSC had to take action and issue this warning to not buy or use this product.

28.     This failure (*i.e.*, the Onewheel failing to balance the rider or the Onewheel suddenly stopping while in motion) occurs as a result of defects with one of the Onewheel's supposed safety processes, which Defendant calls "Pushback." On Defendant's Onewheel website, Defendant describes this purported "safety feature" as follows:

Pushback is a safety feature that lets the rider know they have reached the limits of the board and that they need to lean back and slow down. During Pushback, the nose of the board will lift gradually, signaling the rider to shift their weight back to slow down. It is absolutely critical to rider safety that Pushback is always respected. Pushback is not an arbitrary speed limit that we have decided upon to hold you back. It defines the actual limit that the board can safely go based on a number of parameters including tire pressure, rider weight, terrain, speed, charge levels, etc.
…

You will also experience a Pushback warning when your Onewheel is running out of battery or in an overcharge situation (your board is charged to 100% and you go down hill, overcharging the battery). In these instances, it's important to lean back to slow down to a stop and then dismount the board.

29.     Defendant states in its Onewheel Owners' Manual that:

Like everything in life, Onewheel GT has its limits. If at any time you attempt to go too fast, descend a very steep hill or ride with a low battery, your Onewheel GT will "push back." In a push-back situation, the nose of the board will lift to slow the rider down. The only way to avoid push back is to decrease your speed by leaning back. If you'd like to go a bit faster, you can switch your Digital Shaping to a more aggressive setting. This will have a higher threshold for push back. WARNING: Ignoring safety warnings, including push back, may result in loss of control, serious injury or death.

30.     The Onewheel's pushback "warning" is purportedly triggered in situations where the battery is too full, too low, the rider is descending a steep hill, or the rider is travelling too fast. When working properly, riders are told by Defendant that pushback is supposed to engage and warn the rider when they are reaching operational limits of the Onewheel and shutdown of the motor is imminent. Defendant states that pushback is a warning to the rider that they must shift their weight to the back foot and slow down.

31.     Defendant's Onewheel products are designed to accelerate when the front deck of the board is pushed downward. Upon reaching its top speed or other operational limits, the front deck of the board is supposed to automatically rise to level, and this action, pushback, is supposed to be interpreted by the rider as a signal that the Onewheel has reached its operational limit. Defendant informs consumers that pushback is a safety mechanism and is the board's way of telling riders that they are reaching the limits of performance and that the rider should ease up and/or slow down.

32.     However, unlike other self-balancing, single-wheeled vehicles, the Onewheel's pushback is not strong enough to physically push the rider back to a stable position over the wheel by itself. Thus, for the Onewheel, pushback can only serve as a warning mechanism to the rider of the need to change their orientation on the board. There are no other warnings, such as a sound, or a sound increasing in frequency, volume, or pitch as the Onewheel approaches shut down. Nor are there any visual cues, such as a light that gets increasingly bright or changes color as the Onewheel approaches shut down.

33.     Defendant's "one warning for all dangers" approach means that the rider has no certain way of knowing what actions are necessary to take to address whatever danger is causing the pushback or if the dangerous condition is getting better or worse as a result of their response to the pushback. There is no other warning, just pushback, which is all the Onewheel relies on to warn the rider of impending spontaneous ejection from the board and a risk of catastrophic injury or death. Enhanced warnings such as sounds or lights, or both, could have been added at little cost.

34.     In various circumstances, pushback can be too subtle for a rider to detect, especially at higher speeds when the available torque to push back is reduced due to the under-powered system already being taxed by the power requirements to maintain speed and balance, or it completely fails to work at all, because the board lacks sufficient power reserves to initiate a pushback, and the board's motor shuts down without any warning, or a sufficient warning, which in turn causes the rider to be launched by the board as the result of an unwarned nosedive.

35.     In situations where pushback is unnoticed or fails to engage entirely, a rider will proceed to push the front deck of the Onewheel downward (to continue travelling forward) and the Onewheel will suddenly stop. Riders experience this as a feeling that the motor simply seizes and cuts off and the wheel locks in place, with the Onewheel coming to a complete and immediate

halt, and the rider will experience an unwarned nosedive. When the defects discussed herein trigger an unwarned nosedive, riders are helpless to prevent their forward momentum from throwing them headfirst off the front of the Onewheel. Based on online reports, thousands of riders have suffered some type of injury following an unwarned nosedive, many have suffered severe and permanent personal injuries.

36.     Defendant's Onewheel products are defective insofar as they routinely experience unwarned nosedives—sudden, unintended and uncontrollable abrupt stops at speeds as high as 15-20mph, while being operated under normal circumstances. This issue is the result of the motor and battery not being equipped with sufficient power capability and capacity to perform all of the functions of the Onewheel board consistently (self-balancing, propulsion, slow-down, detectable rider pushback "warning") without being in jeopardy of system overload and shutdown to avoid fire or damage to the electrical system. This defect causes unsafe riding conditions by exposing the Onewheel rider to unwarned nosedives and the possibility of serious or even fatal injury.

37.     The design of the Onewheel, which creates the circumstances and hazards set forth above to occur, results in the Onewheel failing to perform as safely as an ordinary consumer would have expected it to perform when is used in an intended or reasonably foreseeable manner.

38.     Additionally, Defendant has engaged in the wrongful conduct of misrepresenting and concealing that the inconsistent pushback warning system exists and that it exists due to insufficient power in both the Onewheel's motor and battery.

39.     Defendant has both misrepresented the safety of the Onewheel and concealed the fact that Defendant cannot consistently provide a rider with notice that the board is reaching operational limits – the consequences of which can result in serious or fatal injury (injury caused by the board halting and launching the rider into an unwarned nosedive).

40. Defendant asserts that its Onewheel products will only nosedive—meaning the Onewheel will suddenly shut down and cause the rider to be ejected from the Onewheel—if the rider ignores or pushes through Pushback in one of the above-mentioned scenarios. However, in some cases, the Onewheel either unexpectedly shuts off during ordinary use or the Pushback notice is not noticeable to consumers, including Plaintiff, which can cause the nosedive. The result is that the Onewheel will suddenly stop, ejecting the rider off of the Onewheel and posing a serious risk of injury and death to consumers such as Plaintiff.

41. Despite the CPSC's findings and its appeals to Defendant to issue a recall of its Onewheel products, Defendant refused to issue a recall of its Onewheel products, thereby demonstrating the Defendant's callous disregard for the rights and safety of consumers, including Plaintiff.

42. Despite the CPSC's warnings and reports of at least four deaths, Future Motion maintains that its Onewheels are safe, claiming that the product "is safe to ride and tens of thousands of riders enjoy riding Onewheel safely everyday…in fact, it's probably the easiest boardsport in the world."

43. Instead of recalling and issuing a stop sale on what is clearly an unreasonably dangerous and defectively designed product, Defendant doubled-down its claims of safety and accused the CPSC of having ulterior motives for the recall and of trying to quash innovation.

44. In a press release issued by Defendant on the day of CPSC warning, Defendant calls the CPSC warning—which was issued after four people died—"unjustified" and "alarmist." The press release included multiple statements calling into question the CPSC's warning.

45. In spite of Defendant's denials of defects, and resistance to the CPSC's efforts to have Defendant's Onewheel products recalled, the CPSC and Defendant announced the recall of

300,000 Onewheel self-balancing electric skateboards on September 29, 2023. In announcing this recall, it was stated that "[t]he skateboards can stop balancing the rider if the boards' limits are exceeded, posing a crash hazard that can result in serious injury or death."

46.     However, prior to the Defendant's sale of the subject Onewheel GT to Plaintiff in May of 2023, and long before the actual recall of Defendant's Onewheel products on September 29, 2023, the Defendant knew, or should have known that its Onewheel products, including the subject Onewheel GT purchased and used by Plaintiff, were defectively designed and unreasonably dangerous due to Onewheel's defective "pushback" feature that can potentially cause (and did cause) Defendant's Onewheel products, including the subject Onewheel GT, to abruptly stop and nosedive which can cause (and did cause) Onewheel users/riders such as Plaintiff to be violently thrown off of the Onewheel and suffer serious bodily injury.

47.     Specifically, Defendant knew or should have known of Onewheel's faulty "pushback" feature and abrupt stop and n*osedive ejection hazard* from the 34 plaintiffs who filed 19 lawsuits since 2019 against Future Motion in U.S. District Courts sitting in 9 States (CA, CO, FL, IL, LA, MA, OR, TN, WA) alleging abrupt Onewheel motor stoppage without any pushback warning on multiple Onewheel models, including the Onewheel GT model at issue in this case, resulting in a nosedive that catapulted the rider off the Onewheel.

48.     Additionally, the Defendant has been sued in California state court in at least 87 cases involving Onewheel incidents and, upon information and belief, some of those lawsuits involve allegations of damages due to the nosedive ejection hazard.

49.     Defendant affirmatively represents in their warranty manual, for each of its Onewheel models, including the subject Onewheel GT, that Defendant has performed testing to ensure that the Onewheels are operational and safe. Each Warranty Manual presented a

"Declaration of Conformity," that the Onewheel product "is in conformity with the provisions of" particular European Council Directives and sections. A Declaration of Conformity certifies that a consumer product has been tested by an accredited laboratory or test facility to make sure it is fully operational and safe before sale.

50.     By this Declaration, Defendant has represented that its Onewheel products, including the subject Onewheel GT, are fully operational and safe, pursuant to the identified directives which, amongst other parameters, require testing and risk assessment for consumer safety.

51.     However, the issues of Onewheel's battery and motor systems being insufficient to power consistent and detectable pushback (as alleged herein) are so pronounced that such issues could not have gone undetected in safety testing processes. As such, this testing, if performed properly, suggests that Defendant knew of the defect at or before the time that Defendant sold the subject Onewheel GT to Plaintiff.

52.     Upon information and belief, Defendant introduced a software application to use with its Onewheels by no later than 2017—which was well prior to the time that Plaintiff purchased the subject Onewheel GT, which is another means by which Defendant has been provided with knowledge of the pushback warning safety defect at or before the time that Defendant sold the subject Onewheel GT to Plaintiff.

53.     Upon information and belief, since 2017, Defendant has received at least hundreds diagnostic data reports in conjunction warranty claims and "support tickets" that were opened due to customer complaints and requests for service, specifically as the result of the failure of the pushback warning safety system, resulting in unwarned nosedives. As such, Defendant had

knowledge of the defect, prior to and at the time that Defendant sold the subject Onewheel GT to Plaintiff.

54.    Defendant's pre-existing knowledge of the defect inherent in its Onewheel products can be further shown/inferred and supported by the fact that a number of third-party companies (*e.g.*, Land Surf, LLC, BadgerWheel) have attempted to protect Onewheel riders with the creation of aftermarket accessories and equipment to compensate for Defendant's hazardous safety defect.

55.    These third-party companies have been attempting to offer products to make Defendant's Onewheel products safer since at least 2018. As part of Defendant's business operations, it proactively takes steps to locate, identify, and monitor the use of third-party products that are being sold for Onewheels. These third-parties and their products can be easily and quickly found through simply online/internet searches. As such, Defendant has been aware that a market has been created around the Onewheel's pushback warning safety defect that causes unwarned nosedives.

56.    Yet, despite Defendant's knowledge of the defective pushback warning safety system inherent in all of its Onewheel models, Defendant made, and continues to make, misrepresentations regarding the Onewheel's safety on its website, software application, on YouTube and in other forums.

57.    Since at least 2018, and upon information and belief, Defendant has made the following statements on its website, in its FAQs regarding the safety of its Onewheel products:

> In response to the question "Are Onewheels safe?" Defendant states: Yes, Onewheel is safe to ride and tens of thousands of riders enjoy riding Onewheel safely everyday (sic). Like any boardsport, there are inherent risks to riding, but if you learn the basics, stay within your limits, and take time to practice you can enjoy Onewheel's amazing riding experience with confidence every time you step on your board. Onewheel doesn't have to be an adrenaline sport, in fact, it's probably the easiest boardsport in the world. With a large air filled tire, Onewheel can ride

over bumps and cracks in pavement easily. It's important for riders to always wear a helmet while riding and respect the board's limits and Pushback safety feature.

58.     Defendant's above statement is a misrepresentation, because the existence of the defective pushback warning safety feature, of which Defendant is aware, negates that a rider could have "confidence every time [they] step on the board." Nevertheless, Defendant makes misrepresentations about the Onewheel's safety and conceals the defect, despite the fact that Defendant has a duty to inform consumers, including Plaintiff, of such hazards.

59.     Defendant, through the representations alleged herein, lead consumers, including Plaintiff, to believe that the pushback warning safety feature will actually and consistently engage to alert them that the Onewheel is reaching operational limits for one of many reasons of which the rider cannot or may not be aware, while they are utilizing the Onewheel.

60.     Furthermore, Defendant only discloses that "serious injury" can occur where a rider "choose[s] to ignore Pushback." Defendant fails to disclose that, in a number of common scenarios, the Onewheel does not have enough power to make the warning occur in a way that is strong enough to alert the rider or at all.

**PLAINTIFF'S SUBJECT INCIDENT AND INJURIES**

61.     On May 7, 2023, Plaintiff purchased a Onewheel GT directly from the Defendant, through the Defendant's website, for $2,350.00. The online order number for the Onewheel GT that Plaintiff ordered and purchased was Order # 386782. The serial number for the Onewheel GT that Plaintiff ordered and purchased from Defendant is Serial # 2251395348 (referred to hereafter as the "subject Onewheel GT").

62.     After reviewing and relying on Defendant's online marketing materials and representations regarding the design and safety features of the Onewheel products, including the Onewheel GT, Plaintiff decided to purchase [for his own use] a Onewheel GT from the Defendant

with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, that it was safe for its intended and foreseeable use, and that it would operate as advertised and as represented by the Defendant on its Onewheel website.

63.     After receiving his subject Onewheel GT in May of 2023, and after reviewing and relying on the Onewheel user manual (including the safety overview and general warnings), Plaintiff immediately began using/riding the subject Onewheel GT, typically on local paved roads around or near his neighborhood.

64.     On September 21, 2023, Plaintiff was riding the subject Onewheel GT (with a fully charged battery) on a relatively flat paved road around his neighborhood in Republic, Missouri going approximately 18 mph when suddenly, and without warning, the subject Onewheel GT nosedived (without any "pushback") and abruptly stopped, consequently throwing Plaintiff off of the subject Onewheel GT and onto the paved road, landing on his left forearm (referred to hereafter as the "subject incident").

65.     As a result of the subject incident, Plaintiff suffered an open double compound fracture of his left forearm, as well as other bodily injuries and abrasions that required immediate medical attention.

66.     As a result of the subject incident and Plaintiff's resulting injuries and damages, Plaintiff was required to undergo surgery to his left forearm; specifically, an open reduction internal fixation and Synthes. implant to replace a lost segment of bone that had gone through his open wound. Plaintiff also required emergent dental procedures to repair his tooth that became cracked upon impact.

67. As a result of the subject incident and Plaintiff's resulting injuries and damages, Plaintiff has lost wages and income, has lost the ability to perform household chores and services, and will suffer said losses in the future.

68. As a result of the subject incident, Plaintiff suffered and continues to suffer numerous personal injuries and damages, including but not limited to restrictions and limitations on his physical activity and mobility; physical and emotional pain and suffering; disfigurement; medical treatment; medical expenses; and financial losses.

69. At the time of the subject incident, Plaintiff was using/riding the subject Onewheel GT for its intended purpose as a recreational mode of transportation, and did so in a manner that was reasonable and foreseeable by Defendant, and the subject incident occurred through no fault of the Plaintiff.

70. As alleged herein, the Plaintiff's subject Onewheel GT was designed, manufactured, assembled, produced, imported and distributed in a defective, unmerchantable, and unsuitable condition by Defendant, which consequently caused Plaintiff's injuries and damages.

71. As alleged herein, the subject incident and Plaintiff's resulting injuries and damages were actually and proximately caused by the defective and unreasonably dangerous condition of the subject Onewheel GT.

72. As alleged herein, Defendant knew or should have known that its Onewheel products, including the subject Onewheel GT, possessed design defects that pose a serious safety risk to Plaintiff and the public.

73. However, the Defendant sold the subject Onewheel GT to Plaintiff and continued to sell Onewheel products to the consuming public, all while ignoring such design defects and safety problems (*i.e.*, the potential for the Onewheel products to nosedive without warning [or

without a sufficiently detectable warning] and abruptly stop), concealing such design defects and safety problems, and failing to warn Plaintiff and the consuming public of such design defects and safety problems.

74. As a direct and proximate result of Defendant's intentional concealment of such defects; Defendant's failure to warn consumers of such defects; Defendant's negligent misrepresentations regarding the design, safety features, and operation of its Onewheel products, including the subject Onewheel GT; Defendant's defective design of its Onewheel products, including the subject Onewheel GT; and Defendant's failure to stop the sale of, remove from the stream of commerce, and/or timely recall its defectively designed Onewheel products, including the subject Onewheel GT, Plaintiff purchased and used/rode an unreasonably dangerous Onewheel product (*i.e.*, the subject Onewheel GT) that caused him to suffer severe personal injuries, physical and mental pain and suffering, disfigurement, diminished enjoyment of life, medical expenses, loss of income, and other damages.

75. Like other activities, riders assume a number of basic risks associated with operating a powered mobility device; however, that does not include the risk of operating a defective mobility device, such as the Plaintiff's subject Onewheel GT. Because the risk of shut off and nosedive, without warning (or without a sufficiently detectable warning), is so substantial and unpredictable, it is not the kind of risk that is inherent or that should be assigned to a consumer who engages in recreation or sports that are innately dangerous.

76. Because Defendant advertises and markets its Onewheel products safe for almost any age and skill level, and because the literature provided with the Onewheel GT (or any Onewheel model) does not adequately disclose or address the dangerousness of the product,

reasonable consumers such as Plaintiff are not likely to discover, or have reason to discover, before purchase, what an unreasonably unsafe hazard their Onewheel poses.

77. The Defendant's Onewheel products are not the safe, fun, and reliable transportation that Defendant represents them to be, and the Onewheels do not have safety features that perform as Defendant represents that those features do (*e.g.*, heed the "pushback" warnings, and you will be safe).

78. Plaintiff would not have purchased and/or used/rode the subject Onewheel GT had Defendant disclosed and/or warned about the common and unpredictable risk of the Onewheel shutting off and nosediving as a result of the pushback warning safety design defect.

79. As alleged herein, Defendant intentionally, recklessly, and/or negligently concealed, suppressed, and omitted the risks, dangers, defects, and disadvantages of its Onewheel GT, and marketed, sold, and distributed these dangerous Onewheel products as a safe product when, in fact, Defendant knew or had reason to know, that its Onewheel products were not safe or even useable at all for the intended purposes.

## CAUSES OF ACTION

80. With respect to, and in support of each cause of action asserted below, Plaintiff reiterates and re-alleges every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth in each cause of action asserted below.

## COUNT I
## PRODUCTS LIABILITY

81. Missouri Revised Statute § 537.760 governs claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of any product.

82. As used in § 537.760, the term "products liability claim" means a claim or portion of a claim in which the Plaintiff seeks relief in the form of damages on a theory that the Defendant is strictly liable for such damages because:

(1) The defendant, wherever situated in the chain of commerce, transferred a product in the course of his business; and
(2) The product was used in a manner reasonably anticipated; and
(3) Either or both of the following:
    (a) The product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold; or
    (b) The product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damaged as a direct result of the product being sold without an adequate warning.

83. At all relevant times hereto, Defendant designed, developed, constructed, assembled, manufactured, inspected, tested, packaged, labeled, marketed, advertised, promoted, distributed, sold, and continues to sell Onewheel products, including the subject Onewheel GT that Defendant sold to Plaintiff in December of 2018, and which Plaintiff was using/riding at the time of the subject incident.

84. At all relevant times hereto, Defendant also engaged in and currently engages in introducing into the stream of interstate commerce, directly through its website or indirectly through third-parties or related entities, its Onewheel products, including the subject Onewheel GT.

85. As alleged herein, Plaintiff purchased the subject Onewheel GT online directly from Defendant.

86. As alleged herein, at the time of Plaintiff's use of the subject Onewheel GT during the subject incident, the subject Onewheel GT was in the same or substantially similar condition as when it left the possession of the Defendant.

87.     As alleged herein, at the time of the subject incident, Plaintiff was using/riding his subject Onewheel GT in a normal and reasonably foreseeable and anticipated manner.

88.     As alleged herein and above, and at all times relevant hereto, the subject Onewheel GT was and is defective and unreasonably dangerous pursuant to § 537.760 because the subject Onewheel GT was in a defective condition and unreasonably dangerous during normal and anticipated use due to the Onewheel's "pushback" warning safety feature defect which caused the Onewheel to abruptly nosedive and stop during normal and appropriate use, consequently throwing the rider (Plaintiff) off and causing severe injuries or death, and which defect existed at the time the Defendant sold to Plaintiff (and at the time Plaintiff used/rode) the subject Onewheel GT.

89.     As alleged herein and above, and at all times relevant hereto, the subject Onewheel GT was and is also unreasonably dangerous pursuant to § 537.760 because at the time the Defendant sold to Plaintiff (and at the time Plaintiff used/rode) the subject Onewheel GT, the Defendant had knowledge of the subject Onewheel GT's "pushback" warning safety feature defect, including knowledge that the defect can cause the subject Onewheel GT to abruptly nosedive and stop during normal and reasonably foreseeable/anticipated use, consequently causing the rider (Plaintiff) to be violently thrown off the Onewheel GT, resulting (and which did result to Plaintiff) in severe injuries to the rider, but the Defendant failed to adequately warn Plaintiff (and consumers alike) about such defect or its consequences, thereby rendering the subject Onewheel GT unreasonably dangerous.

90.     The subject incident and Plaintiff's resulting injuries and damages alleged herein were a direct and proximate result of the unreasonably dangerous and defective condition of the subject Onewheel GT, and as such, the Defendant is liable to Plaintiff for his resulting injuries and damages.

## COUNT II
## BREACH OF EXPRESS WARRANTY

91.     Missouri Revised Statute § 400.2-313 provides in relevant part that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

92.     With respect to each of Defendant's Onewheel products, including the subject Onewheel GT, Defendant expressly represented and warranted on its website, in its promotional literature, in its Onewheel user manuals, in its Onewheel warranty manuals, on social media, and in YouTube videos that the Onewheel products, including the subject Onewheel GT, were properly designed and tested; were equipped with safety features (such as the "Pushback" safety feature) to prevent situations such as what occurred during the subject incident; were free of any defects in materials and workmanship; were safe and would operate as intended during normal and anticipated use; and that their subsystems and components were fit for the purposes for which they were intended.

93.     Prior to purchasing and using/riding the subject Onewheel GT, Plaintiff reviewed, considered, and relied on the Defendant's express warranties regarding the operation, use, and safety features of the subject Onewheel GT, which formed the basis of the bargain.

94.     However, as alleged herein, the Defendant's Onewheel products, including the subject Onewheel GT, did not conform to Defendant's express warranties, affirmations or promises because the subject Onewheel GT was *not* properly designed and tested; it was *not* safe and *did not* operate as intended during normal and anticipated use; its subsystems and components were *not* fit for the purposes for which they were intended; and it was *not* free of defects in materials and workmanship because the "Pushback" warning safety feature was/is defective and did not/does

not work as intended and warranted and promised by Defendant—all in violation of Missouri Revised Statute § 400.2-313.

95.     The subject incident and Plaintiff's resulting injuries and damages alleged herein were a direct and proximate result of the Defendant's breach of its aforementioned express warranties, affirmations, and/or promises, and as such, the Defendant is liable to Plaintiff for his resulting injuries and damages.

## COUNT III
## BREACH OF IMPLIED WARRANTY

96.     Missouri Revised Statute § 400.2-314, titled "Implied warranty — merchantability — usage of trade," provides in relevant part the following: "(1) Unless excluded or modified (section 400.2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "(2) Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; and (d)  run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any."

97.     Similarly, Missouri Revised Statute § 400.2-315, titled "Implied warranty — fitness for particular purpose," provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods there is unless excluded or modified under section 400.2-316 an implied warranty that the goods shall be fit for such purpose."

98.     With respect to the subject Onewheel GT, and at all relevant times hereto, Defendant was a "merchant" and "seller" of "goods," and the subject Onewheel GT was/is a "good" under Missouri law.

99.     Further, the Defendant, at the time of selling the subject Onewheel GT to Plaintiff, knew or had reason to know of the particular purpose for which the subject Onewheel GT was being purchased and used for, and that the Plaintiff relied on the Defendant's skill and/or judgment to furnish him a good (*i.e.*, the subject Onewheel GT) that was fit for such purpose.

100.    As alleged herein, Defendant impliedly warranted that the subject Onewheel GT was properly designed and tested; was equipped with safety features (such as the "Pushback" safety feature) to prevent situations such as what occurred during the subject incident; was free of any defects in materials and workmanship; was safe and would operate as intended during normal and anticipated use; was fit for the ordinary purposes for which the subject Onewheel GT was/is used; and conformed to the promises or affirmations of fact made on the subject Onewheel GT user/instruction manual and warranty manual.

101.    However, as alleged herein, the subject Onewheel GT did not conform to the Defendant's implied warranty of merchantability or the implied warranty of fitness for particular purpose because the subject Onewheel GT was *not* properly designed and tested; it was *not* safe and *did not* operate as intended during normal and anticipated use; its subsystems and components were *not* fit for the purposes for which they were intended; and it was *not* free of defects in materials and workmanship because the "Pushback" warning safety feature was/is defective and did not/does not work as intended and warranted and promised by Defendant—all in violation of Missouri Revised Statutes § 400.2-314 and § 400.2-315.

102.   The subject incident and Plaintiff's resulting injuries and damages alleged herein were a direct and proximate result of the Defendant's breaches of the subject Onewheel GT's implied warranty of merchantability and implied warranty of fitness for particular purpose, and as such, the Defendant is liable to Plaintiff for his resulting injuries and damages.

**COUNT IV**
**FRAUDULENT CONCEALMENT AND MISREPRESENTATION**

103.   As alleged herein, in connection with the advertising and sale of Defendant's Onewheel products, including the subject Onewheel GT, Defendant fraudulently and intentionally concealed and suppressed material and important information regarding their design, safety features, use and operation, and risks (including the increased risk of injury caused by the defective "Pushback" safety feature).

104.   Defendant knew, or should have known, that it was concealing, suppressing, and misrepresenting true information about the design, safety features, use and operation, risks, and its known increased risk of injury caused by the defective "Pushback" safety feature.

105.   Defendant knew that Plaintiff would regard the matters that Defendant concealed, suppressed, and misrepresented to be important in determining whether or not Plaintiff should or would purchase and use/ride the subject Onewheel GT.

106.   Defendant intended to cause Plaintiff to rely on Defendant's concealment, suppression, and misrepresentations of material information regarding the design, use, safety features, and risks (of the Onewheel products) for the purpose of Plaintiff purchasing and using/riding the subject Onewheel GT.

107.   Plaintiff was justified in relying, and did rely, on Defendant's concealment, suppression, and misrepresentations of material information regarding the design, use, safety features, and risks when deciding to purchase and use/rise the subject Onewheel GT.

108. Had Defendant been truthful and *not* concealed, suppressed, and misrepresented material information regarding the design, use, safety features, and risks of its Onewheel products, including the subject Onewheel GT, Plaintiff would have known of the Onewheel design defects and the increased risk of injury such defects present, and as such, Plaintiff would not have purchased and used/rode the subject Onewheel GT.

109. As a direct and proximate result of Defendant's fraudulent concealment, suppression, and misrepresentations of material information regarding the design, use, safety features, and risks of its Onewheel products, including the subject Onewheel GT, Plaintiff purchased and used/rode the subject Onewheel GT and consequently suffered physical and mental injuries and damages as well as economic losses for which the Defendant is liable to Plaintiff for.

**COUNT V**
**VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT**

110. Plaintiff purchased and used/rode the subject Onewheel GT and suffered ascertainable losses as a result of Defendant's acts and omissions (as alleged herein) in violation of Missouri Revised Statute §§ 407.010 *et seq.*

111. Missouri Revised Statute § 407.020, The Missouri Merchandising Practices Act ("MMPA"), provides in relevant part the following:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…in or from the state of Missouri, is declared to be an unlawful practice…Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

112. As alleged herein, Defendant knowingly and fraudulently misrepresented, falsely promised, concealed, and suppressed material facts from Plaintiff and the consuming public with respect to Defendant's advertisements and sale of its Onewheel products, including the subject

Onewheel GT, regarding the design, the safety features, and the use and operation of its Onewheel products, including the subject Onewheel GT.

113.    Defendant's promises and representations (on its website, in its advertising, in its Onewheel user manuals, and in its Onewheel warranty manuals) regarding the design, the safety features, and the use and operation of its Onewheel products, including the subject Onewheel GT were false and misleading and constituted unfair or deceptive acts and practices declared unlawful by the MMPA.

114.    Defendant knowingly made false representations for the purpose of deceiving the Plaintiff and the consuming public regarding the design, the safety features, and the use and operation of its Onewheel products, including the subject Onewheel GT, in order to ensure the marketability and success of its Onewheel products, which was in violation of the MMPA.

116.    Defendant's concealment, misrepresentations and/or omissions as alleged in this Complaint are material in that they relate to matters which are important to consumers such as Plaintiff, or are likely to affect the purchasing decisions or conduct of consumers such as Plaintiff, regarding the Defendant's Onewheel products.

117.    Defendant engaged in the concealment, suppression, misrepresentations and/or omissions of material facts regarding the (defective) design, the (defective) "Pushback" safety feature, and the use and operation of its Onewheel products with the intent that Plaintiff and the consuming public would rely upon the concealment, suppression, misrepresentation and/or omissions of such material facts to purchase and use/ride Defendant's Onewheel products.

118.    The concealment, suppression, misrepresentation and/or omission of the aforementioned material facts had the capacity to, was reasonably foreseeable that it would, and did so deceive the Plaintiff in purchasing and using the subject Onewheel GT.

115.     Had Defendant disclosed the true facts concerning the increased risks and damages they knew or should have known to be associated with the (defective) design, the (defective) "Pushback" safety feature, and the use and operation of its Onewheel products, Plaintiff would not have purchased and used the subject Onewheel GT.

118.     As a direct and proximate cause of Defendant's concealments, suppressions, misrepresentations and/or omissions of material facts, as alleged herein, Plaintiff suffered actual and ascertainable loss of money as well as physical and mental injuries and damages.

119.     Pursuant to Missouri Revised Statute § 407.025, Plaintiff is entitled to recover f his actual damages, attorneys' fees, and other equitable relief from Defendant.

## COUNT VI
## NEGLIGENCE

120.     Defendant owed a duty of reasonable care to Plaintiff to design, develop, manufacture, inspect, test, label, market, promote, place into the stream of commerce, and sell a non-defective product (*i.e.*, the subject Onewheel GT) that was reasonably safe for its intended, normal, and foreseeable use by Plaintiff.

121.     Defendant failed to exercise and breached its duty of ordinary in the design, development, manufacture, inspection, testing, labeling, marketing, promotion, distribution, and sale of the subject Onewheel GT in that Defendant knew or should have known that its Onewheel products, including the subject Onewheel GT, were defective; did not conform to Defendant's representations and warranties; and the use of such Onewheel products created a high risk of unreasonable harm to the Plaintiff and consumers alike.

122.     Defendant was negligent in the design, development, manufacture, inspection, testing, labeling, marketing, promotion, distribution, and sale of the subject Onewheel GT, including its subsystems and components, in the following respects:

(a)     By causing, allowing, and permitting the subject Onewheel GT to be sold to and used by Plaintiff when the subject Onewheel GT was dangerous, defective, hazardous, and not suitable to be used for its intended purposes;

(b)     By failing to prevent the subject Onewheel GT from being sold to and used by Plaintiff when the subject Onewheel GT was dangerous, defective, hazardous, and not suitable to be used for its intended purposes;

(c)     By causing, allowing, and permitting the subject Onewheel GT to be sold to and used by Plaintiff when Defendant knew or should have known that the subject Onewheel GT was dangerous, defective, hazardous, and not suitable to be used for its intended purposes;

(d)     By failing to prevent the subject Onewheel GT from being sold to and used by Plaintiff when Defendant knew or should have known that the subject Onewheel GT was dangerous, defective, hazardous, and not suitable to be used for its intended purposes;

(e)     By failing to take necessary and proper steps and measures to prevent the sale of the subject Onewheel GT when they were dangerous, defective, hazardous, and not suitable to be used for their intended purposes;

(f)     By failing to provide reasonable, necessary, and proper notice, signal, and/or warnings of the dangers, hazards, defects, and increased safety risks of using/riding the subject Onewheel GT in a normal and reasonably foreseeable and anticipated manner;

(g)     By failing to provide reasonable, necessary, and proper notice, signal, and/or warnings of the dangers, hazards, defects, and increased safety risks of using/riding the subject Onewheel GT in a reasonable, effective, and timely manner;

(h)     By failing to timely recognize that the subject Onewheel GT was dangerous, hazardous, defective, and not suitable to be used for its intended purposes;

(i)     By failing to take reasonable, necessary, and proper measures upon receiving notice and/or knowledge that Defendant's Onewheel products, including the subject Onewheel GT, were dangerous, hazardous, defective, and not suitable to be used for their intended purposes;

(j)     By failing to provide and/or distribute reasonable, necessary, and proper warnings and instructions for the use of the subject Onewheel GT;

(k)     By negligently, carelessly, and improperly designing the subject Onewheel GT;

(l)     By negligently, carelessly, and improperly selling the subject Onewheel GT;

(m)     By failing to timely, properly, and adequately inspect and/or test the subject Onewheel GT;

(n)     By negligently, carelessly, and improperly marketing, promoting, and advertising Defendant's Onewheel products, including the subject Onewheel GT;

(o)     By marketing Defendant's Onewheel products, including the subject Onewheel GT, in such a way as to be misleading, and which did mislead, the consuming public, including Plaintiff, with respect to the design, safety, and risks of the Onewheel products;

(p)     By failing to timely, properly, and adequately communicate known risks of dangers inherent to Defendant's Onewheel products, including the subject Onewheel GT;

(q)     By failing to timely, properly, and adequately recall Defendant's Onewheel products, including the subject Onewheel GT, or otherwise prevent their sale or remove them from the stream of commerce;

(r)     By failing to give proper, adequate, and required warnings notifications, and advisories about the dangers and risks associated with and inherent to Defendant's Onewheel products, including the subject Onewheel GT;

(s)     By designing, developing, and manufacturing Onewheel products, including the subject Onewheel GT, in such a way as to cause them to come to sudden, abrupt, and violent stops without warning during normal, proper, and anticipated use;

(t)     By designing, developing, and manufacturing Onewheel products, including the subject Onewheel GT, in such a way as to cause unreasonable risk of injury to users such as Plaintiff;

(u)     By failing to take necessary, proper, and adequate precautions for the safety of persons such as Plaintiff who purchase and use/ride Defendant's Onewheel products;

(v)     By failing to timely, properly and adequately ensure that Defendant's Onewheel products, including the subject Onewheel GT, were reasonably safe for their intended use;

(w)     By negligently, carelessly, and improperly designing and manufacturing the Onewheel products, including the subject Onewheel GT;

31

(x)     By failing to properly manufacture the components of the subject Onewheel GT to function properly when subjected to normal use;

(y)     By failing to use safer and reasonable alternative methods of design and manufacture;

(z)     By placing a defective and unreasonable dangerous product (*i.e.*, the subject Onewheel GT) into the stream of commerce; and

(aa)    By failing to take reasonable and suitable precautions for the safety of its consumers and customers, including the Plaintiff.

123.    As a direct and proximate result of the Defendant's negligent acts and omissions alleged herein, Plaintiff purchased and used/rode the subject Onewheel GT, was involved in the subject incident, and consequently suffered physical and mental injuries and damages as well as economic losses—all of which the Defendant is liable to Plaintiff for.

## COUNT VII
## GROSS NEGLIGENCE/PUNITIVE DAMAGES

124.    At all relevant times hereto, Defendant knew or should have known that the subject Onewheel GT was defective, dangerous, and was not fit for its intended use.

125.    At all relevant times hereto, Defendant fraudulently and intentionally concealed and suppressed material and important information from Plaintiff and the consuming public regarding the design, safety features, use and operation, and risks (including the increased risk of injury caused by the defective "Pushback" safety feature) of the Onewheel products, including the subject Onewheel GT.

126.    At all relevant times hereto, Defendant knew, or should have known, that it was concealing, suppressing, and misrepresenting true information about the design, safety features, use and operation, risks, and its known increased risk of injury caused by the defective "Pushback" safety feature.

127. At all relevant times hereto, Defendant intended to cause Plaintiff to rely on Defendant's concealment, suppression, and misrepresentations of material information regarding the design, use, safety features, and risks (of the Onewheel products) for the purpose of Plaintiff purchasing and using/riding the subject Onewheel GT.

128. At all relevant times hereto, Defendant engaged in malicious, fraudulent and oppressive conduct towards Plaintiff and the consuming public, and acted with willful, wanton, conscious, and/or reckless disregard for the safety of Plaintiff and the consuming public.

129. At all relevant times hereto, Defendant continued to market and sell its Onewheel products to consumer, including the subject Onewheel GT sold to Plaintiff, without disclosing the true risks of using/riding such Onewheel products.

130. Defendant knew that its Onewheel products, including the subject Onewheel GT, was defective and lacked the appropriate risk of use warnings, but intentionally concealed and/or recklessly failed to disclose the defective nature of its Onewheel products and the risks they present and continued to market, distribute, and sell Onewheel products without sufficient warnings so as to maximize sales and profits at the expense of the health and safety of the consuming public, including the Plaintiff, with willful, wanton, conscious, and/or reckless disregard of the foreseeable harm to users of Defendant's Onewheel products.

131. Defendant's intentional and/or reckless failure to disclose [to Plaintiff and the consuming public] material and important information regarding their design, safety features, use and operation, and risks (including the increased risk of injury caused by the defective "Pushback" safety feature) deprived Plaintiff of necessary information to enable him to weigh the true risks of using/riding using Defendant's Onewheel products.

132.     As a direct and proximate result of Defendant's acts and omissions alleged herein—which were willful, wanton, conscious, and was in reckless disregard for the health and safety of the Plaintiff and the consuming public—Plaintiff suffered profound injuries that required medical treatment, incurred medical and hospital expenses, and suffered loss of income.

133.     Pursuant to Missouri Revised Statute § 510.265, Plaintiff seeks actual and punitive damages from Defendant as a result of Defendant's conscious, reckless, willful, wanton, deliberate, and grossly negligent conduct as alleged herein which was knowingly committed in complete disregard for the health and safety of users of Defendant's Onewheel products, including Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish Defendant and deter Defendant from similar conduct in the future.

134.     To the extent Senate Bill 591, effective Aug. 28, 2020, which amended (among other things) provisions of Chapter 510 of the Revised Statutes of Missouri, is held to apply to Plaintiff's claim for punitive damages, Senate Bill 591 violates the Missouri Constitution and is, therefore, invalid and without legal effect.

135.     Plaintiff has the right to have his claims (including those for punitive damages) tried to a jury and § 510.261 (as amended by Senate Bill 591) infringes on and/or impairs Plaintiff's right to a trial by jury guaranteed by Article I, Section 22(a) of the Missouri Constitution and § 105.055. *See also State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82 (Mo. banc 2003).

136.     RSMo. § 510.261 (as amended by Senate Bill 591) further violates the separation of powers established by Article II, Section 1 of the Missouri Constitution.

137.    Senate Bill 591 violates the requirements in Article III, Section 23 of the Missouri Constitution that a bill have only a single subject and that that subject be clearly expressed in its title.

138.    RSMo. § 510.261 (as amended by Senate Bill 591) further violates the prohibition against special laws granting to any corporation, association or individual a special or exclusive right, privilege, or immunity, established by Article III, Section 40(28) of the Missouri Constitution.

139.    RSMo. § 510.261 (as amended by Senate Bill 591) was improperly passed in that it purports to change Missouri Supreme Court Rule 55.19 and the law was not limited to the purpose of amending the rule in violation of Art. V, § 5 of the Missouri Constitution.

140.    Missouri Supreme Court Rules 52.11, 55.05, 55.01, and 55.19 are procedurally binding on the Plaintiff to this action and require the initial pleading to contain Plaintiff's request for punitive damages.

## DEMAND FOR JURY TRIAL

141.    Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff S. Shane Knox respectfully demands judgment against Defendant Future Motion, Inc., and requests compensatory damages, punitive damages, together with interest, cost of suit, attorneys' fees, and all such other relief as the Court deems just and proper as well as:

(a)    compensatory damages to Plaintiff for past, present, and future damages, including, but not limited to, great pain and suffering and emotional distress and anguish, for personal injuries, health and medical care costs, together with interest and costs as provided by law

(b)    for all ascertainable economic and non-economic damages in an amount as provided by law and to be supported by evidence at trial;

35

(c)     for specific damages according to proof;

(d)     for punitive and exemplary damages according to proof;

(e)     for pre-judgment interest and post-judgment interest as allowed by law;

(f)     for reasonable attorneys' fees;

(g)     for the costs of these proceedings; and

(h)     for such other and further relief as this Court deems just and proper.

Respectfully submitted,

HALL ANSLEY,
A Professional Corporation

By:     */s/ Cheryl P. Hom*
        STEVEN J. BLAIR
        Missouri Bar No. 52706
        CHERYL PRICE HOM
        Missouri Bar No. 70671
        3275 E. Ridgeview St.
        Springfield, MO. 65804
        Phone: (417) 890-8700
        Facsimile: (417) 890-8855
        E-mail: sblair@hallansley.com
        E-mail: chom@hallansley.com

        *Attorneys for Plaintiff*